## KERN-LIMERICK, INC. ET AL. *v.* SCURLOCK, COMMISSIONER OF REVENUES FOR ARKANSAS.

No. 115.   Argued January 4, 1954.—Decided February 8, 1954.

*Assistant Attorney General Holland* argued the cause for appellants. On the brief were *Acting Solicitor General Stern, Mr. Holland, Ellis N. Slack* and *Lee A. Jackson* for the United States, and *A. F. House* and *William Nash* for Kern-Limerick, Inc., appellants.

*O. T. Ward* argued the cause and filed a brief for appellee.

MR. JUSTICE REED delivered the opinion of the Court.

This appeal brings here the legality of the application of the Arkansas Gross Receipts Tax Law of 1941, Ark. Stat., 1947, § 84–1901 *et seq.*, to a transaction by which certain private contractors engaged in a joint venture, abbreviated WHMS, procured in Arkansas two diesel tractors costing $17,146, for use in the construction there for the United States of a naval ammunition depot estimated to cost over thirty million dollars. The tractors were procured from Kern-Limerick, Inc., a local dealer. The circumstances of the transaction would concededly make Kern-Limerick liable for the tax if the real purchaser were not the United States.

The applicable sections of the Gross Receipts Tax Law levy an "excise tax of two [2%] per centum upon the gross proceeds or gross receipts derived from all sales to any person." § 84–1903. This is a sales tax, not a use tax.[1] It is to be paid to the Tax Commissioner by the seller, § 84–1908. He is the taxpayer, § 84–1902 (e), and "shall collect the tax levied hereby from the purchaser."

---

[1] *Cook* v. *Southeast Arkansas Transportation Co.,* 211 Ark. 831, 202 S. W. 2d 772.

§ 84–1908.  Gross receipts derived from sales to the United States Government are exempt.  § 84–1904.

The construction contract had, so far as pertinent here, the provisions as to "Materials—Purchases" which are set out in the margin.[2]  It was entered into by the Department of the Navy "under authority of Sections 2 (c)(10) and 4 (b)" of the Armed Services Procurement

---

[2] Materials—Purchases.  Article 8—(a) "Except where provision is otherwise made by the Officer-in-Charge, all materials, articles, supplies, and equipment required for the accomplishment of the work under this contract shall be furnished by the Contractor.  The Contractor shall act as the purchasing agent of the Government in effecting such procurement and the Government shall be directly liable to the vendors for the purchase price.  The exercise of this agency is subject to the obtaining of approval in the instances and in the manner required by subparagraph (c) of this article.  The Contractor shall negotiate and administer all such purchases and shall advance all payments therefor unless the Officer-in-Charge shall otherwise direct.

"(b) Title to all such materials, articles, supplies and equipment, the cost of which is reimbursable to the Contractor hereunder, shall pass directly from the vendor to the Government without vesting in the Contractor, and such title (except as to property to which the Government has obtained title at an earlier date) shall vest in the Government at the time payment is made therefor by the Government or by the Contractor or upon delivery thereof to the Government or the Contractor, whichever of said events shall first occur.  This provision for passage of title shall not relieve the Contractor of any of its duties or obligations under this contract or constitute any waiver of the Government's right to absolute fulfillment of all of the terms hereof.

"(c) No purchase in excess of $500 shall be made hereunder without the prior written approval of the Officer-in-Charge, except that the Officer-in-Charge may, in his discretion, either reduce the limitation on the amount of any purchase which may be made without such prior approval or authorize the Contractor to make purchases in amounts not in excess of $2500 for any one purchase without obtaining such prior approval."

These provisions were also applicable to subcontractors.

Act of 1947.  62 Stat. 21, 41 U. S. C. (Supp. V) § 157 *et seq.*  These sections authorized this cost-plus-a-fixed-fee contract by negotiation without advertising.[3]

Kern-Limerick, Inc., the seller, upon demand by the Commissioner paid under protest the amount of the sales tax and brought this action for a refund in accordance with state law.  The United States intervened, as under the contract any state taxes the contractor was required to pay were reimbursable to it by the Government.  The Supreme Court of Arkansas held WHMS was the purchaser and the claimed tax payable by Kern-Limerick as the "seller."  It denied the contention of the United States that the Government was the purchaser.  It held that the Armed Services Procurement Act authorized the Navy Department "to purchase . . . supplies or services for its own *use,*" but did not authorize the Department "to buy nails, lumber, cement, tractors, etc., which were not to be *used* by the Navy but by WHMS [in this instance] to construct, as independent contractors, the Ammunition Dump."  The state court further held that, even if the Department had the authority to buy the tractors, it could not, under the Procurement Act of 1947, delegate this power to WHMS.  221 Ark. 439, 254 S. W. 2d 454.

Appellants seek reversal of the decision on the grounds that the Procurement Act authorizes this contract and

---

[3] Section 2 (c)  provides:

"All purchases and contracts for supplies and services shall be made by advertising, as provided in section 3, except that such purchases and contracts may be negotiated by the agency head without advertising if—

"(10) for supplies or services for which it is impracticable to secure competition; . . . ."

Section 4 (b)  prohibits use of cost-plus-a-percentage-of-cost contracts and prescribes other operative limitations not pertinent here. All provisions required by those sections were included in the contract.

that the Arkansas tax cannot by statute or constitutionally be applied to a purchase by the United States.

The state court's interpretation of the Procurement Act to deny the Navy authority to buy supplies or equipment for the construction of an ammunition dump is, we think, too restrictive. The Act gives broad powers to the Armed Services for obtaining as cheaply and promptly as possible "purchases and contracts for supplies or services . . . for the use of any such agency or otherwise," § 2 (a), and provides:

> SEC. 9. "(b) The term 'supplies' shall mean all property except land, and shall include, by way of description and without limitation, public works, buildings, facilities, ships, floating equipment, and vessels of every character, type and description, aircraft, parts, accessories, equipment, machine tools and alteration or installation thereof." [4]

We hold that the Act allows the purchase of this machinery.

It seems to us, also, that under the Procurement Act the Armed Services may use agents, other than its own official personnel, to handle for it the detail of purchase. The contention of Arkansas which was accepted by its

---

[4] S. Rep. No. 571, 80th Cong., 1st Sess., p. 21, had this to say of this language:

"To make it clear that the bill relates to all procurement by the services, except purchases with nonappropriated funds, subsection (b) of this section defines 'supplies' to include all property except land, and shall include, but without limitation, public works, buildings, facilities, ships, floating equipment, and vessels of every character, type and description, aircraft, parts, accessories, equipment, machine tools, and alteration or installation thereof. These are really examples and this section is to be construed in the broadest manner possible."

The corresponding House Report, No. 109, p. 23, omitted only the last sentence.

Supreme Court is, as we understand it, that the Procurement Act does not permit a delegation to private contractors of any authority to purchase for or pledge the credit of the United States even though these contractors have contracts for construction or supplies on a cost-plus basis. Further, it follows from the Arkansas contention, that without such statutory authority the purchase by the contractor was not for the United States but for itself. This contention is based on the language of the Procurement Act, §§ 7 (a) and (b).[5] Pursuant to § 7 (a), the Secretary of the Navy, somewhat obscurely, appears to have delegated his authority to determine the necessity for a negotiated contract to a Navy Contracting Officer asserted in the contract, without exception, to be the Chief of the Bureau of Yards and Docks. See 32 CFR §§ 400.201–5 and 402.101. That official negotiated the contract, as it stated and as is admitted by stipulation, under the authority of § 2 (c)(10) of the Procurement Act—"for supplies or services for which it is impracticable to secure competition."

Arkansas calls attention to the restrictions on delegation in § 7 (b) upon which the state court commented. But the provisions of § 7 (b), as the words show, do not

---

[5] "SEC. 7. (a) . . . Except as provided in subsection (b) of this section, the agency head is authorized to delegate his powers provided by this Act, including the making of such determinations and decisions, in his discretion and subject to his direction, to any other officer or officers or officials of the agency.

"(b) The power of the agency head to make the determinations or decisions specified in paragraphs (12), (13), (14), (15), and (16) of section 2 (c) and in section 5 (a) shall not be delegable, and the power to make the determinations or decisions specified in paragraph (11) of section 2 (c) shall be delegable only to a chief officer responsible for procurement and only with respect to contracts which will not require the expenditure of more than $25,000."

Appellee also refers to § 10. As that provides only for interservice procurement, we do not think it pertinent.

116

cover actions under § 2 (c) (10), and the section's prohibition of delegation in certain instances is inapplicable. We find nothing in the Procurement Act that bars a contract for purchase for the United States of supplies or services by private persons.

The Government asserts that §§ 4 (a) and (b) authorize this contract.  Under them, negotiated contracts such as this "may be of any type which . . . will promote the best interests of the Government."  Under such a provision, it seems that the determination to use purchasing agents is permissible.  Where there is no prohibition of a particular type of contract and no direction to use a particular type, the contracting officers are free to follow business practices.[6]  We conclude that the Navy Department has power to negotiate contracts which provide for private purchasing agents for supplies and materials.

With this determination that the provisions of the contract are within the authority of the Procurement Act, we turn to examine the validity of the argument that the naming of the Government as purchaser was only colorable and left the contractor the real purchaser and the transaction subject to the Arkansas tax.  *Alabama* v. *King & Boozer,* 314 U. S. 1, is relied upon primarily.  We consider this argument under the assumption, made by the Supreme Court of Arkansas, that the contract was designed to avoid the necessity in this cost-plus contract of the ultimate payment of a state tax by the United States.

We are mindful, too, of the careful attention Congress has given in recent years to a proper adjustment of tax liabilities between the federal and the state sovereignties. Congress has been solicitous to see that states and their subdivisions are not unduly burdened by federal acquisi

---

[6] *United States* v. *Linn,* 15 Pet. 290, 316; *Muschany* v. *United States,* 324 U. S. 49, 63.

tion of property taxable by the states when otherwise held. It understands the burdens on local public agencies from the new federal installations and their accompanying personnel. Provisions deemed suitable have been made.[7] These include recent legislation designed to make independent contractors carrying on activities of the Atomic Energy Commission subject to state sales taxes.[8] But in recommending the legislation the Joint Committee on Atomic Energy, while providing for voluntary contributions, did not propose to subject Government property and purchases to state taxes. The enactment left them free.[9] This recognition of the constitutional immunity of the Federal Government from state exactions rests, of course, upon unquestioned authority. From *McCulloch* v. *Maryland,* 4 Wheat. 316, through *Gillespie* v. *Oklahoma,* 257 U. S. 501, and *New York ex rel. Rogers* v. *Graves,* 299 U. S. 401, a host of cases upheld freedom from state taxation not only for Government activities but also for the agencies and

---

[7] *E. g.,* T. V. A., 16 U. S. C. § 831*l*; R. F. C., 15 U. S. C. § 607. Cf. *Dameron* v. *Brodhead,* 345 U. S. 322.

[8] 67 Stat. 575. See S. Rep. No. 694, 83d Cong., 1st Sess.

[9] Section 9 of the Atomic Energy Act of 1946, 60 Stat. 765, 42 U. S. C. § 1809 (b), as amended, provides: "In order to render financial assistance to those States and localities in which the activities of the Commission are carried on and in which the Commission has acquired property previously subject to State and local taxation, the Commission is authorized to make payments to State and local governments in lieu of property taxes. Such payments may be in the amounts, at the times, and upon the terms the Commission deems appropriate, but the Commission shall be guided by the policy of not making payments in excess of the taxes which would have been payable for such property in the condition in which it was acquired, except in cases where special burdens have been cast upon the State or local government by activities of the Commission, the Manhattan Engineer District or their agents. In any such case, any benefit accruing to the State or local government by reason of such activities shall be considered in determining the amount of the payment."

salaries of persons that carried on the work. *James* v. *Dravo Contracting Co.,* 302 U. S. 134, reviewed this judicial history, adopted for federal contractors and state taxation the reasoning that subjected a state contractor's earnings to federal income tax and upheld the state's gross receipts tax upon a federal contractor's earnings on the ground that it did not interfere "in any substantial way with the performance of federal functions." *Id.,* at 161. The question of the immunity of Government in relation to its purchases of commodities was left open. *Id.,* at 153. *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466, overruled *New York ex rel. Rogers* v. *Graves, supra,* and *Gillespie, supra,* fell in *Oklahoma Tax Comm'n* v. *Texas Co.,* 336 U. S. 342, 365.

A phase of the question reserved in the *Dravo* case came up in *Alabama* v. *King & Boozer,* 314 U. S. 1. We declared that federal sovereignty "does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity." *Id.,* at 9. That case involved the usual type sales tax on the seller, collectible by him from the buyer. There was there, too, a cost-plus-a-fixed-fee contract with the United States. We held the state tax collectible from the sellers, notwithstanding the Government bore the economic burden. A few excerpts will make clear the purport of the ruling:

> "As the sale of the lumber by King and Boozer was not for cash, the precise question is whether the Government became obligated to pay for the lumber and so was the purchaser whom the statute taxes, but for the claimed immunity. . . . The contract provided that the title to all materials and supplies for which the contractors were 'entitled to be reimbursed' should vest in the Government 'upon delivery at the site of the work or at an approved

storage site and upon inspection and acceptance in writing by the Contracting Officer.' " *Id.*, at 10.

". . . we think all the provisions which we have mentioned, read together, plainly contemplate that the contractors were to purchase in their own names and on their own credit all the materials required, unless the Government should elect to furnish them; that the Government was not to be bound by their purchase contracts, but was obligated only to reimburse the contractors when the materials purchased should be delivered, inspected and accepted at the site." *Id.*, at 11.

"But however extensively the Government may have reserved the right to restrict or control the action of the contractors in other respects, neither the reservation nor the exercise of that power gave to the contractors the status of agents of the Government to enter into contracts or to pledge its credit." *Id.*, at 13.

The contract here in issue differs in form but not in economic effect on the United States. The Nation bears the burden of the Arkansas tax as it did that of Alabama. The significant difference lies in this. Both the request for bids and the purchase order, in accordance with the contract arrangements making the contractors purchasing agents for the Government, note 2, *supra,* contain this identical, specific provision:

"3. This purchase is made by the Government. The Government shall be obligated to the Vendor for the purchase price, but the Contractor shall handle all payments hereunder on behalf of the Government. The vendor agrees to make demand or claim for payment of the purchase price from the Government by submitting an invoice to the Con-

tractor. Title to all materials and supplies purchased hereunder shall vest in the Government directly from the Vendor. The Contractor shall not acquire title to any thereof."

The purchase order is headed Navy Department Bureau of Yards and Docks, is signed by the contractor as purchasing agent, and requires the seller to make this certification on the claim for payment:

" 'I certify that the above bill is correct and just; that payment therefor has not been received; that all statutory requirements as to American production and labor standards, and all conditions of purchase applicable to the transactions have been complied with; and that the State or local sales taxes are not included in the amounts billed.'

. . . . .

"In the event the Contractor is required to pay and does pay State or local sales taxes, the words 'and that State or local sales taxes are not included in the amounts billed' should be struck from the certification and the following additional certification added:

" 'The amount of State or local sales, use, occupational, gross receipts, or other similar taxes or license fees imposed on the Vendor or Vendee by reason of this transaction is $————. The Vendor, or Vendee, as the case may be, agrees upon direction of the United States to make appropriate claim for refund and in the event of any refund, to pay the amount thereof to the United States.' "

The stipulation of facts shows in detail the course of business under this contract in the purchase of supplies and the form of this purchase. Both conform to the language of the contract in requiring specific Government approval to the purchasing agent for each request for bid and each purchase. Under these circumstances, it is clear

that the Government is the disclosed purchaser and that no liability of the purchasing agent to the seller arises from the transaction.[10]

A comment should be made about another excerpt from *King & Boozer*. It was referred to in the Arkansas opinion as though it were effective for the determination of this case. The quotation is this:

> "The soundness of this conclusion turns on the terms of the contract and the rights and obligations of the parties under it. The taxing statute, as the Alabama courts have held, makes the 'purchaser' liable for the tax to the seller, who is required 'to add to the sales price' the amount of the tax and collect it when the sales price is collected, whether the sale is for cash or on credit. Who, in any particular transaction like the present, is a 'purchaser' within the meaning of the statute, is a question of state law on which only the Supreme Court of Alabama can speak with final authority." *Id.*, at 9–10.

Read literally, one might conclude this Court was saying that a state court might interpret its tax statute so as to throw tax liability where it chose, even though it arbitrarily eliminated an exempt sovereign. Such a conclusion as to the meaning of the quoted words would deny the long course of judicial construction which establishes as a principle that the duty rests on this Court to decide for itself facts or constructions upon which federal constitutional issues rest.[11] The quotation refers, we think, only to the power of the state court to determine who is responsible under its law for payment to the state of the

---

[10] See *Hodgson* v. *Dexter*, 1 Cranch 345, 362; *Larson* v. *Domestic & Foreign Corp.*, 337 U. S. 682, 703; Restatement, Agency, § 320; Williston, Contracts, § 281. Cf. *Merchant Fleet Corp.* v. *Harwood*, 281 U. S. 519, 525.

[11] *New Jersey Ins. Co.* v. *Division of Tax Appeals*, 338 U. S. 665, 674; *Richfield Oil Corp.* v. *State Board*, 329 U. S. 69, 83; *United*

exaction. The formulation of the "precise question" at the first of the quotation from *King & Boozer,* p. 118, *supra,* indicates this.

We find that the purchaser under this contract was the United States. Thus, *King & Boozer* is not controlling for, though the Government also bore the economic burden of the state tax in that case, the legal incidence of that tax was held to fall on the independent contractor and not upon the United States.[12] The doctrine of sovereign immunity is so embedded in constitutional history and practice that this Court cannot subject the Government or its official agencies to state taxation without a clear congressional mandate. No instance of such submission is shown.

Nor do we think that the drafting of the contract by the Navy Department to conserve Government funds, if that was the purpose, changes the character of the transaction. As we have indicated, the intergovernmental submission to taxation is primarily a problem of finance and legislation. But since purchases by independent contractors of supplies for Government construction or other activities do not have federal immunity from taxation, the form of contracts, when governmental

---

States v. *Allegheny County,* 322 U. S. 174, 182; *Union Pacific R. Co.* v. *Public Service Comm'n,* 248 U. S. 67, 69. Cf. *Dyer* v. *Sims,* 341 U. S. 22, 29.

This principle covers the question of who is the "purchaser." *S. R. A., Inc.* v. *Minnesota,* 327 U. S. 558, 564; *Metropolitan Bank* v. *United States,* 323 U. S. 454, 456; *Standard Oil Co.* v. *Johnson,* 316 U. S. 481, 483.

[12] See *Oklahoma Tax Comm'n* v. *Texas Co.,* 336 U. S. 342, 365: "True intergovernmental immunity remains for the most part. But, so far as concerns private persons claiming immunity for their ordinary business operations (even though in connection with governmental activities), no implied constitutional immunity can rest on the merely hypothetical interferences with governmental functions here asserted to sustain exemption."

immunity is not waived by Congress, may determine the effect of state taxation on federal agencies,[13] for decisions consistently prohibit taxes levied on the property or purchases of the Government itself.[14]

*Reversed.*

Mr. Justice Black, with whom The Chief Justice and Mr. Justice Douglas concur, dissenting.

The Court holds that Government purchasing agents can delegate to their subordinates authority to delegate to private persons power to buy goods for the Government and pledge its credit to pay for them. *Alabama* v. *King & Boozer,* 314 U. S. 1, 13, rejected a similar contention. The Court points to no statute which either expressly or by fair implication grants any such broad delegation authority to Government agents.

Experiences through the years have caused Congress to hedge in Government purchases by many detailed safeguards such as competitive bidding after public advertising.* Due to a supposed necessity for haste, chosen Government officials have sometimes been granted temporary powers to buy supplies at their discretion. But these occasions, perhaps fortunately, have been rare, and have usually been limited to items costing little. The Court here, however, without any clear statutory author-

---

[13] *Alabama* v. *King & Boozer,* 314 U. S. 1; *Carson* v. *Roane-Anderson Co.,* 342 U. S. 232; *Esso Standard Oil Co.* v. *Evans,* 345 U. S. 495.

[14] *United States* v. *Allegheny County,* 322 U. S. 174; *Mayo* v. *United States,* 319 U. S. 441; *Pittman* v. *Home Owners' Corp.,* 308 U. S. 21, 31.

*For illustrations of experience with abuse of wartime Government contracting and purchasing, see Hearings Before House Committee on Military Affairs, 74th Cong., 1st Sess., on H. R. 3 and H. R. 5293, pp. 590–616, discussing profiteering during the Revolution, the Civil War, the War with Spain, and World War I. The hearings were held on a bill to end profiteering in wartime.

ity, makes a tremendous break with long established buying practices which embodied safeguards wisely adopted to prevent needless waste of Government money. Maybe Congress has power, though I am not sure it has, to delegate Government spending to private contractors. Even so, a purpose to have Government business handled in such a loose manner should not be attributed to Congress in the absence of much more explicit statutory language than the Court is able to cite here.

I think the Supreme Court of Arkansas was right in sustaining the State's tax on authority of *Alabama* v. *King & Boozer, supra.* The Court in effect overrules that case. In doing so it moves back in the direction of discredited tax immunities like that sustained in the case of *Gillespie* v. *Oklahoma,* 257 U. S. 501, later disapproved. I would not do that, but would sustain application of this Arkansas tax to purchases of the cost-plus-a-fixed-fee contractor and affirm the State Supreme Court's judgment.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACK join, dissenting.

The Arkansas Gross Receipts Tax is laid, as the majority opinion points out, on the gross receipts from all sales to any person. Ark. Stat., 1947, § 84–1903. The Act, however, spells out the incidence of the tax in detail. "Sales of service and tangible personal property including materials, supplies and equipment made to contractors who use same in the performance of any contract are hereby declared to be sales to consumers or users and not sales for resale." § 84–1903 (e). "The term 'consumer' or 'user' means the person to whom the taxable sale is made . . . . All contractors are deemed to be consumers or users of all tangible personal property including materials, supplies and equipment used or consumed by them in performing any contract and the sales

of all such property to contractors are taxable sales within the meaning of this act." § 84–1902 (i).

On the basis of this statutory language the Supreme Court of Arkansas held that the contractor was the "purchaser" of the tractors and that the sale involved was taxable. It seems clear that, as a matter of state law, the contractor was the "consumer" and "user" of these tractors, whether or not the contractor would have been a purchaser in the common-law view. Of course Arkansas could not impose its tax on the contractor in such a way as to discriminate against the United States. But that has not been attempted here.

What Arkansas has done is to define an independent contractor as the "consumer" or "purchaser" of tractors which the contractor uses. Obviously the contractor could be made liable for the tax, if its contract were with a private corporation rather than with the Federal Government. Arkansas has not tried to collect the tax from the United States, and it clearly could not do so. See *Mayo* v. *United States,* 319 U. S. 441. Arkansas has collected the tax from the "purchaser" as that word is defined by the taxing statute. That is where the *legal incidence* of the tax falls. If the *economic burden* of the tax falls on the Federal Government, it falls there because the Government assumed it by contract, not because Arkansas placed it there. See *Curry* v. *United States,* 314 U. S. 14, 18.

The constitutional problem, of course, is to determine whether the *legal incidence* of a tax will be disregarded because the *economic burden* of the tax is on the United States. When Congress has not spoken, that determination must be made by the Court.

In *Alabama* v. *King & Boozer,* 314 U. S. 1, we allowed a sales tax to be exacted from an independent contractor acting for the Government on a cost-plus-a-fixed-fee basis. That tax was measured by the value of lumber

used by the contractor in performing its contract. The Government exercised much the same sort of detailed control over that transaction as it did over the present one. The Court was careful to point out, in rejecting the claim of immunity, that "Who, in any particular transaction like the present, is a 'purchaser' within the meaning of the statute, is a question of state law on which only the Supreme Court of [the State] can speak with final authority." 314 U. S., at 9–10.

In that case, however, the Supreme Court of Alabama had held the transaction immune from the tax. There was no authoritative state determination of the *legal incidence* of the tax. The Court therefore assumed, 314 U. S., at 10, that the tax fell on the "purchaser" of the lumber in the common-law sense. The Court then went on to show, in answer to the same arguments which the Government has made in this case, that the United States was not a purchaser of the lumber even under common-law rules. It is this segment of the opinion which the Court now uses practically to overrule the decision itself. No doubt the United States was, under some of the language used in *King & Boozer,* the "purchaser" of these two tractors. But the United States is not the "purchaser" under the language used in the Arkansas statute, and it is the Arkansas statute that controls this case. What was important in *King & Boozer* was the substance of the transaction and the nature of the economic burden on the United States. On these two paramount issues it is impossible to distinguish the present case.

The concepts "title," "agency," and "obligation to pay" are no basis for this constitutional adjudication. Today they are used to permit any government functionary to draw the constitutional line by changing a few words in a contract. When the Congress deliberates over this

problem, as it often has,[1] it does not worry about the passing of title or other legal technicalities. The Congress debates whether as a matter of policy, including the need of the States for revenue, the holder of a cost-plus government contract should be immune from state taxation.

*Alabama* v. *King & Boozer* and the cases it followed [2] were a long step forward from the time when a State's power to tax was nullified whenever the federal treasury was even remotely affected. We should not take this equally long step backwards. We should hold that, until the Congress says differently, the States are free to tax all sales to cost-plus government contractors. We should dispense with fruitless talk of agency, titles, and obligations to pay. The *legal incidence* of a tax is a matter for the States to determine. We should decide today, as we did more than a decade ago, that a tax on a contractor for goods he uses is constitutional, even though the *economic burden* falls on the Federal Government.

---

[1] See, for example, 86 Cong. Rec. 7528, 7532–7535; 88 Cong. Rec. 2835, 3464–3466, 4814; Hearings Before House Committee on Ways and Means on H. R. 6617, 77th Cong., 2d Sess. (1942).

[2] *James* v. *Dravo Contracting Co.,* 302 U. S. 134; *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466.