COUNTY OF CLARK, Appellant, *v.* THE CITY OF LOS ANGELES, CALIFORNIA, a Municipal Corporation of the State of California, and the DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS ANGELES, CALIFORNIA, Respondents.

No. 4602

March 10, 1964                                    390 P.2d 38

*Edward G. Marshall,* District Attorney, and *John A. Porter,* Deputy District Attorney, Clark County, for Appellant.

*Roger Arnebergh,* City Attorney, *Alfred H. Driscoll, Jr.,* Assistant City Attorney, of Los Angeles, California, *Deaner, Butler and Adamson,* and *Calvin M. Cory,* of Las Vegas, Nevada, for Respondents.

*Harvey Dickerson,* Attorney General, State of Nevada, for Intervenor State of Nevada.

## OPINION

By the Court, McNAMEE, J.:

In 1952 the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, in the case of County of Clark v. City of Los Angeles, sustained a demurrer to the complaint of the County of Clark which sought to collect a license tax imposed by county ordinance upon the business of generating electric power. It was conceded that the tax was imposed for purposes of revenue as distinguished from regulation.

The applicable statute then in existence upon which the county relied in passing its ordinance taxing the business of generating electric power was paragraph 14, § 1942, 1929 NCL, 1931–1941 Supp., which empowered counties: "To fix, impose and collect a license tax on and to regulate all character of lawful trades, callings, industries, occupations, professions, and business conducted in their respective counties, outside of the limits of incorporated cities and towns."

The action of the district court was affirmed by this court in Clark County v. City of Los Angeles, 70 Nev. 219, 265 P.2d 216, where we held that said paragraph 14 empowered counties to fix license taxes on businesses for the purpose of regulation only and not for the purpose of raising revenue.

Stats. Nev. 1953, ch. 363, amended said paragraph 14, of § 1942, to read as follows: "To fix, impose and collect a license tax *for revenue* to regulate all character of lawful trades, callings, industries, occupations, professions, and business conducted in their respective counties, outside of the limits of incorporated cities and towns." In addition, the title to the act was amended to read: "An act to create a board of county commissioners in the several counties of this state and to define their duties and powers and qualifications, *authorizing the levy of license taxes for revenue purposes, * * *.*"

Pursuant to this amendment the county commissioners of Clark County passed an ordinance entitled, in part: "An ordinance to fix, impose and collect occupational license tax for revenue from all persons, associations, partnerships, corporations, municipal corporations, foreign municipal corporations, and other organizations for the privilege of producing and generating for commercial purposes electrical power in the County of Clark, State of Nevada, outside of the limits of incorporated cities and towns, * * *." Said ordinance imposed a specific tax on the business or activity of generating, manufacturing, or producing electric power in the County of Clark, State of Nevada, outside of the limits of incorporated cities and towns.

The county sought to levy this tax upon the City of Los Angeles for its activity of generating power on the Nevada side of the Boulder Dam Project. Upon the city's refusal to pay the tax for the period from June 1, 1958 to May 31, 1961, the county brought this suit to recover $138,600, the amount of taxes assessed for that period. The State of Nevada intervened in opposition to Clark County. The lower court granted summary judgment in favor of the city. The county appeals therefrom.

It is appellant's contention that the 1953 amendment which added the words "for revenue" removed the obstacle which prevented the tax in the case of Clark County v. Los Angeles, supra. On the other hand, the respondents maintain that the amendment had no such effect; that in the absence of a comma after the words "for revenue" the amendment merely means that the counties are authorized to impose a license tax for the purpose of obtaining revenue in order to be able to regulate all character of lawful trades, etc.

We stated in Clark County v. City of Los Angeles, supra, that the legislature could delegate its police power and its power to tax to the counties, but that if "the grant be of regulatory power only, it does not include the power to license for purposes of revenue. Such power is granted only where the grant plainly appears from the

delegating statute." No such grant "plainly appeared" from the statute prior to the 1953 amendment.

The intent of the legislature to grant such power by the 1953 amendment is obvious, because not only was the title of the act amended to include the words "for revenue purposes," but also paragraph 14 was amended to insert the words "for revenue." True it is that an ambiguity is apparent in the amendment of paragraph 14, but we think it proper, under the circumstances, to construe the legislative intent in accordance with the contention of appellant that the words "for revenue" removed the obstacle which prevented the tax in the prior case.

Respondents take the position that even though the legislature attempted to empower the counties to license businesses for revenue purposes, Clark County cannot do so as applied to the respondents for several constitutional reasons. All of these raise important and interesting points, but only one requires consideration.

Respondents maintain that the trial court correctly concluded that the respondents, in generating electrical energy at the dam site under and pursuant to the provisions of the agency contract by and between respondents and the United States of America, were and are acting as an agency of the United States and thus are immune from the county taxation provided by the said county ordinance.

In the agreed statement of facts appearing in the record it was stipulated that the Boulder Canyon Project, including the Hoover Dam, the Hoover Dam power plant, and the works incidental thereto were built by the United States pursuant to the Boulder Canyon Project Act; that all of the facilities thereof (with which we are here concerned) are owned by the United States; that in 1941 the United States entered into a contract with the respondents wherein the City of Los Angeles was designated as agent of the United States for the operation and maintenance of that portion of Hoover Dam power plant which, from time to time during the term of such

agency, might be necessary for the generation of electrical energy to be taken by the several allotees; and that the City of Los Angeles during all of the time mentioned in plaintiff's complaint was acting pursuant to said agency contract.

The history of the enactment of the Boulder Canyon Project Act and the Boulder Canyon Project Adjustment Act, which was later enacted, the nature and the developments following their enactment are delineated in Clark County v. State, 65 Nev. 490, 199 P.2d 137. In that case we determined that annual payments of $300,000 by the United States to Nevada under the Boulder Canyon Project Adjustment Act on the condition that if certain taxes were levied and collected, annual payments by the United States would be reduced in the amount of such taxes, were a gift to Nevada, and that Clark County, where a part of the Boulder Dam Project was located, was not entitled to portions of such payment. We stated at that time that it was not the intent of either the United States or the State of Nevada in making such payments to deprive Clark County of any of its taxing rights. However, we expressed no opinion in that case whether the county could assess and collect taxes against the privilege of generating or transforming electrical energy or the use of the facilities at the Boulder Dam Project. That question is now before us for determination.

The contract between the city and the federal government designates the city as an agency of the federal government in the operation of the government's generators.

McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, first established the rule that a state does not have the power to tax the federal government, its agencies, or instrumentalities.

In Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 117, the court stated:

"This recognition of the constitutional immunity of the Federal Government from state exactions rests, of course, upon unquestioned authority. From McCulloch

v. Maryland, 4 Wheat. 316, through Gillespie v. Oklahoma, 257 U.S. 501, and New York ex rel. Rogers v. Graves, 299 U.S. 401, a host of cases upheld freedom from state taxation not only for Government activities but also for the agencies and salaries of persons that carried on the work."

In that case an Arkansas statute provided for a sales tax on gross receipts from all sales in the state. The statute was held to be unconstitutional as applied to the purchase of two tractors by private contractors for use in constructing a naval ammunition depot for the United States under a cost-plus-fixed-fee contract entered into with the Navy Department. The act under which the purchase was made was held to provide that the contractors acted as purchasing agents for the government. "But since purchases by independent contractors of supplies for Government construction or other activities do not have federal immunity from taxation, the form of contracts, when governmental immunity is not waived by Congress, may determine the effect of state taxation on federal agencies, for decisions consistently prohibit taxes levied on the property or purchases of the Government itself."

In United States v. Livingston, 179 F.Supp. 9, aff'd, 364 U.S. 281 (1960), the contract between du Pont and a federal agency did not expressly apply the word "agent" to du Pont in connection with its procurement activities, although it specifically provided that du Pont, as agent of the United States, may lease government housing and real estate. It was the state tax on its procurement activities that was attacked. The court there said, at page 22: "An agent, however, need not be called by that name to be one. Liabilities of principals and its immunities from taxation are not dependent upon the use, or omission, of a magic label. It is clear that du Pont's procurement activities were authorized and were openly on behalf of the United States, and at the government's expense and risk."

In the present case not only was the city's activity in generating power done solely for the benefit of the United States under a contract requiring the city to

operate the government facilities, the city to be reimbursed only for its actual expenses in the operation, but also the city is expressly designated in the contract as an agent of the federal government. The lower court found as a fact that the city was an agent. But whether the status of the city could be considered a question of fact is of doubtful significance, because we conclude that the contract between the city and the federal government under its express terms, establishes as a matter of law an agency relation between the city and the government in the generation of power. Being expressly designated as an agent of the government for the specific purpose of generating power, the legal incidence of the tax falls directly upon the United States and thus infringes the government's constitutional immunities from taxation.

The so-called Detroit cases,[1] decided after Kern-Limerick and before Livingston, can be distinguished. As stated in Livingston: "In each of the Detroit cases, the Supreme Court was concerned with taxation of a completely separate business enterprise which used government property for its purposes of profit and which derived as much advantage from the use as if it had legal title to the property. No such condition is to be found here."

In this connection it is interesting to note Justice Frankfurter's comment in his separate opinion, following the opinion of the court in City of Detroit v. Murray Corp., 355 U.S. 489, in which he dissented in part and concurred in part, regarding Kern-Limerick:

"As Mr. Chief Justice Stone stated for a unanimous court in Alabama v. King & Boozer, 314 U.S. 1, 9, the application, and therefore the outcome, in cases like those before us of these general principles 'turns on the terms of the contract and the rights and obligations of the parties under it.' Nothing better illustrates the truth of this statement than a comparison of King & Boozer with Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, a

---

[1]United States v. City of Detroit, 355 U.S. 466; United States v. Township of Muskegon, 355 U.S. 484; City of Detroit v. Murray Corp., 355 U.S. 489.

case whose relevance is not minimized by the loud silence the Court's present opinions accord it."
Affirmed.

BADT, C. J., and THOMPSON, J., concur.