

## THE ATTORNEY GENERAL

### OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

March 20, 1969

Honorable Robert S. Calvert      Opinion No. M-361
Comptroller of Public Accounts
Capitol Station                Re:    Whether cafeterias
Austin, Texas                      operated by branch banks
                                      of the Federal Reserve
                                      Bank of Dallas are re-
                                      quired to remit the sales
                                      tax on the basis of the
                                      percentage of gross
                                      receipts from the sale of
Dear Mr. Calvert:              food to bank employees.

Your recent request for an opinion on the captioned matter reads in part as follows:

> "Branch banks of the Federal Reserve Bank of Dallas are located in San Antonio, Houston and El Paso. Each operate cafeterias serving food to bank employees. The cafeterias currently collect tax in accordance with the bracket system of the Acts /as authorized in Article 20.021(A) of the Texas Limited Sales, Excise and Use Tax Act and as authorized in Section (K)(2) of Article 1066c of the Local Sales and Use Tax Act.7

> "The banks remit tax on the cafeteria sales in the amount collected from the patrons rather than remitting on the basis of a percentage of gross receipts as required by the Act.

> ". . . Because of the volume of small sales, the cafeterias do not collect enough tax through the bracket system to pay the tax due upon their gross receipts. Apparently the cafeterias do not have fifty per cent (50%) of their receipts arising from sales under the minimum amount upon which tax may be collected so as to comply with the special reporting methods allowed by Article 20.05(B) of the Act.

"The Federal Reserve Bank has indicated its inability to pay the tax stating that it is a federal instrumentality and that Congress has not authorized payment of this type of tax under Section 7 of the Federal Reserve Act. . . .

"The Comptroller thus asks your opinion as to whether the Comptroller can require payment of the sales tax based on the remittance of a percentage of gross receipts of the bank cafeteria operations of the Federal Reserve Bank of Dallas as described above."

The applicable portions of the Texas Sales Tax Act are Article 20.02 and a portion of Article 20.021 (A), Title 122A, Taxation-General, Vernon's Civil Statutes.

"Art. 20.02  Imposition of Limited Sales Tax

"There is hereby imposed a limited sales tax at the rate of three per cent (3%) on the receipts from the sale at retail of all tangible personal property within this State."

"Art. 20.021  Method of Collection; Bracket System

"(A)  Every retailer shall add the sales tax imposed by Article 20.02 of this Chapter to his sale price and when added the tax shall constitute a part of the price, shall be a debt of the purchaser to the retailer until paid, and shall be recoverable at law in the same manner as the purchase price.  It is further specified that where tangible personal property is segregated in contemplation of transfer of title or possession and is thereafter to be transported by common carrier from the seller to the buyer, with the price fixed F.O.B. the seller's place of business, and with transportation charges separately stated, the tax herein imposed shall be computed only upon the basis of the charge for the tangible personal property itself, exclusive of the separately stated and independently fixed transportation charges.  When the sale price shall involve a fraction of a dollar, the tax shall be added to the sale price upon the following schedule:

| Amount of Sale | Tax |
|---|---|
| $ .01 to $ .16 | No Tax |
| .17 to .49 | $ .01 |
| .50 to .83 | .02 |
| .84 to 1.16 | .03 |
| 1.17 to 1.49 | .04 |
| 1.50 to 1.83 | .05 |

Provided, that for successive brackets for this schedule in this paragraph, the tax shall be computed by multiplying three per cent (3%) times the amount of the sale. Any fraction of one cent ($.01) which is less than one half of one cent ($.005) of tax shall not be collected. Any fraction of one cent ($.01) of tax equal to one half of one cent ($.005) or more shall be collected as a whole cent ($.01) of tax."

A Federal Reserve Bank is an operating agency of the Federal Government, created to supply a need of the national government. Federal Reserve Bank of Minneapolis v. Register of Deeds for Delta County, 284 N.W. 667, 288 Mich. 120 (1939); 12 U.S.C.A., §§ 221-531.

We have not been furnished any facts concerning the necessity or business feasibility of the operation of the employee cafeterias. Ordinarily if the operation of a facility has a natural and reasonable tendency to aid in the accomplishment of the bank's business purposes, especially as related to its dealings with its employees, it will be considered within the implied or incidental powers of the bank, and the determination of such matters is largely within the discretion of those who manage the bank's affairs. Heinz v. National Bank of Commerce, 237 F. 942 (1916); 19 Am.Jur.2d 508, Corporations, §§ 1053 - 1055. Therefore, for purposes of this opinion, we are assuming that the operation of the cafeterias by the bank in question is within the powers of the Federal Reserve Bank and in the furtherance of its functions.

The Texas Sales Tax Act provides for exemptions with reference to certain types of property and also with reference to property sold to or consumed by certain exempt entities and organizations. Article 20.04, Title 122A, Taxation-General, V.C.S. But we find no Texas law which grants an exemption for sales tax purposes to any vendor, as such. However, there

is no doubt that Congress can provide statutory immunity from state taxation for federal instrumentalities. United States v. City of Detroit, 355 U.S. 466, 2 L.Ed.2d 424, 78 S.Ct. 474 (1958).

Congress has expressly provided Federal Reserve Banks with an exemption from taxation under Section 7 of the Federal Reserve Act, which exemption reads as follows:

> "Federal Reserve Banks, including the capital stock and surplus therein and the income derived therefrom, shall be exempt from federal, state and local taxation, except taxes upon real estate."
> 12 U.S.C.A., § 531.

It clearly follows that the Texas sales tax cannot be imposed on a Federal Reserve Bank itself. Hence, the ultimate question for our determination may be phrased as follows: Would a requirement that a Federal Reserve Bank remit sales taxes over and above those which can be collected from its customers under the bracket system (Article 20.021 (A)) (i.e., a tax based on gross receipts) amount to the imposition of a tax against the bank? In our opinion, such a requirement would be tantamount to the imposition of a tax.

In First Agricultural National Bank of Berkshire County v. State Tax Commission, _____ U.S. ___, 20 L.Ed.2d 1138, 88 S.Ct. 2173 (1968), a National Bank was the purchaser of certain tangible personal property. After holding that a state sales tax could not be imposed upon a National Bank without express and direct authority from Congress, the court turned to the issue of whether the Massachusetts sales tax was, in fact, imposed on the purchaser-bank. The Massachusetts Sales Tax Act with respect to the imposition and collection of the tax is very similar to the above-quoted provisions of the Texas Act, and the Massachusetts Supreme Judicial Court had held that the incidence of the tax in this case was on the vendor, not the purchaser (229 N.E.2d 245). This view was rejected by the United States Supreme Court. Mr. Justice Black, speaking for the majority, said: "And essentially the question for us is, on whom does the incidence of the tax fall." He then cited the case of Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed 546. In Kern-Limerick the legal incidence of a tax was held to be determined by "who is responsible . . . for payment to the state of the exaction."

The Court proceeded to hold that when a sales tax must be passed on to the purchaser, the legal incidence of the tax is on the purchaser and that the Massachusetts Legislature intended that the sales tax in question be passed on to the purchaser.

Therefore, as to the remittance of taxes additional to those collected from the retail purchasers, our inquiry can be refined to the question, "Who is responsible . . . for payment to the state of the exaction?"

In Calvert v. Canteen Company, 371 S.W.2d 556 (Tex. Sup. 1963), the Supreme Court of Texas held that the sales tax was on the sales transaction, and if the retailer should not, under the bracket system, collect all of the tax from his customers, then the retailer must absorb the difference. The court further pointed out that the vendors were required to absorb the tax not collected from their customers "only because they have elected to sell items at a retail price less than the price provided for collectibility from the consumer." Thus a retailer can always protect himself from absorbing taxes by the simple expedient of always adjusting his prices so as to enable him to collect from his customers all taxes that he will be compelled to remit under the per cent of total receipts formula. However, this escape mechanism is irrelevant as to an exempt concern. We fail to perceive any reason for a Federal Reserve Bank to adjust its prices in order to escape absorbing taxes when the power of the state to tax that concern is absent in the first instance. The contrary view envisions the bank as responding to the pressure of taxing power. In the face of the Federal Exemption Statute, such pressure does not exist.

In conforming the rationale of First Agricultural National Bank of Berkshire County v. State Tax Commission, supra, to this situation, this office is of the opinion that the incidence is on the bank's customers with respect to the tax which can be collected by the bank from them under the bracket system, and that the incidence of any further taxes is on the bank because as to such additional taxes it, and it alone, "is responsible . . . for payment to the state of the exaction."

## SUMMARY

The only sales taxes which the branch banks of the Federal Reserve Bank of Dallas

are bound to remit in regard to their sales in employee cafeterias is the amount of taxes collected from their customers in accordance with the bracket system prescribed by Article 20.021 (A), Title 122A, Taxation-General, Vernon's Civil Statutes and Article 1066c, Section 2(K)(2), Vernon's Civil Statutes. The Federal Reserve Bank is not required to remit sales taxes measured by gross receipts and not actually collected from its customers.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

AW:dc

Prepared by
Alfred Walker
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
James Broadhurst
Harold Kennedy
Bill Allen
Monroe Clayton

W. V. Geppert
Staff Legal Assistant