

**THE ATTORNEY GENERAL**

**OF TEXAS**

**AUSTIN, TEXAS 78711**

**JOHN L. HILL**
**ATTORNEY GENERAL**

August 26, 1974

The Honorable Robert S. Calvert
Comptroller of Public Accounts
State of Texas
Austin, Texas

Opinion No. H- 380

Re: Taxation of rented
automobiles under
Article 6.01, Taxation-
General, V. T. C. S.

Dear Mr. Calvert:

You have asked for an opinion on a variety of questions arising under the Motor Vehicle Retail Sales and Use Tax Act, Art. 6.01, Taxation-General, V. T. C. S., which levies a tax on the sale, rental, and lease of motor vehicles as follows:

> (1) There is hereby levied a tax upon every retail sale of every motor vehicle sold in this State, such tax to be equal to four percent (4%) of the total consideration paid or to be paid for said motor vehicle. In the case of a motor vehicle purchased to be rented or held for rental, the tax is levied on the gross rental receipts of the renting of such motor vehicle at the same rate as that tax levied in Article 20.02 of this title. Provided, however, that where the period for rental is intended to be for more than 31 days, such rental is deemed to be a lease as defined in this Article and the purchaser-lessor must pay the tax on total consideration paid or to be paid for said motor vehicle. The tax on rental receipts shall be collected by the owner from the renter who has

> exclusive use of the motor vehicle for a period
> of time and has the right to direct the manner
> of use of the vehicle, whether exercised or not,
> for that period. It is unlawful and shall be a
> misdemeanor for the owner of the rented motor
> vehicle to advertise that the tax or any part thereof
> will be absorbed or assumed by the renter.

You first ask whether the tax imposed by Art. 6.01, can, consistent with the Federal Constitution, be collected when a motor vehicle is rented to an employee of the federal government for use on government business. As long ago as 1819 in the historic case of McCulloch v. Maryland, 4 Wheat 316, 4 L. ed. 579 (1819), the Supreme Court declared unconstitutional a state tax on the Bank of the United States because, according to Chief Justice Marshall, it amounted to a "tax on the operation of an instrument employed by the government of the Union to carry its powers into execution." In a long line of subsequent decisions the Court has consistently held that the federal government and its agencies are constitutionally immune from state exactions. First Agricultural National Bank v. Tax Commission, 392 U.S. 339 (1968) and cases cited therein.

Of particular relevance in answering the question you have asked is Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110 (1954). In this case goods had been purchased for use in the construction of an ammunition depot for the United States; the seller of the goods paid the tax owed by virtue of the transaction and then brought suit for a refund. The Court found that under the contract in question the United States was the actual purchaser of the goods and then reaffirmed its earlier holdings that the United States cannot constitutionally be subjected to the payment of state sales taxes. Since the seller could not collect the tax, he could not be held responsible for the payment of it and was entitled to a refund.

Kern-Limerick, Inc. v. Scurlock firmly establishes the proposition that the federal government is constitutionally immune from the payment of state sales taxes and that those who sell to the government may

not be held responsible for collecting such taxes.  Thus, the motor vehicle sales tax imposed by Art. 6.01 cannot be collected from the federal government or its agencies.  When an owner of vehicles for rent has been adequately assured, by affidavit or otherwise, that the renter is an employee of the federal government acting on government business and within the scope of his employment, then he should not collect the sales tax that ordinarily would be due on the transaction.

In your second question you ask whether any sales tax would be due where a renting and leasing firm supplies a vehicle held for rental to a customer to be used as a substitute for a vehicle leased to that customer but which is temporarily being repaired.  The Motor Vehicle Retail Sales and Use Tax distinguishes between a vehicle held for rental and one held for lease.  A vehicle is held for rental if its exclusive use is to be given to another for a consideration and for a period of time not exceeding thirty-one days under any one agreement.  Art. 6.03 (E), Taxation-General.  When a firm purchases a vehicle to be held for rental, it does not pay the motor vehicle sales tax; instead, the tax is levied on the gross rental receipts derived from renting the vehicle and must be collected by the owner from the renter.  Art. 6.01 (l), Taxation-General. On the other hand, a vehicle is deemed to be held for lease if its exclusive use is to be given to another for a consideration and for a period of time exceeding thirty-one days.  Art. 6.03 (F), Taxation-General.  When a renting and leasing firm purchases a vehicle to be held for lease, then it must pay the motor vehicle sales tax on the total consideration paid or to be paid for the vehicle; the lessee is not required to pay any tax.  Art. 6.01 (l), Taxation-General.  When a person, or firm, engages in both renting and leasing, he must keep adequate records enabling the two types of transactions to be segregated.  Art. 6.01 (7), Taxation-General.

The answer to your second question depends, then, upon whether under the agreement between the parties the customer must pay anything more in order to have another vehicle substituted for the one he originally leased when repairs have become necessary.  If so, any additional amounts paid must be considered gross receipts from the renting of a vehicle, and a sales tax equal to four per cent of the additional consideration paid would be

owed.  If no additional charge is made, then no gross receipts are derived from the vehicle held for rental, and no sales tax would be due.

Your next question concerns Art. 6.01(8), Taxation-General, which provides:

> (8) When the owner of a motor vehicle changes the status of the motor vehicle from a rental unit to a lease unit, the owner shall so inform the State Comptroller of Public Accounts of such change on a form to be supplied by the Comptroller, and the owner shall then pay the tax on such motor vehicle based on the owner's book value and at the rate provided in this Article.

In executing his responsibilities under this provision, the Comptroller has promulgated a regulation establishing a depreciation rate of two per cent per month to be used in determining the book value of a vehicle the status of which is to be changed from a rental unit to a lease unit.  You ask whether such a regulation is valid.

The term "book value" generally refers to the cost of merchandise less depreciation.  Black's Law Dictionary  227 (4th ed., 1951).  It can be presumed that in enacting Art. 6.01(8) the Legislature used this term in accordance with its normal meaning.  Art. 5429b-2, § 2.01, V. T. C. S. (The Code Construction Act).  But the Legislature specified no rate of depreciation to be used in determining the book value, nor did it authorize the Comptroller to do so.  Instead it provided that the tax owed when the status of a vehicle is changed from rental to lease should be based on the "owner's book value" thereby leaving the method of arriving at the book value initially within the owner's discretion.  So long as the rate of depreciation used by the owner is reasonable and not contrary to established accounting practices, it will be valid.  The Comptroller cannot require owners to use a depreciation rate of two per cent per month, and any regulation attempting to do so would, in our opinion, be invalid.  The

Comptroller could promulgate guidelines advising owners that he will challenge as unreasonable the use of a particular depreciation method or a rate in excess of a certain amount per month, but he cannot establish any one rate as the only valid one.

Your final question is whether the motor vehicle sales tax becomes due when the owner of the vehicle held for rental converts it to his own personal or business use.  The owner of a vehicle held for rental is permitted to register it for use on the state's highways without paying any sales tax.  Instead, the tax is levied on the gross receipts derived from renting the vehicle and is paid by the renter.  Art. 6.01 (1)(6), Taxation-General.  But it is plain that the Legislature in providing for the registration of rent vehicles without payment of the sales tax did not intend to permit renting firms and their owners to escape payment of the sales tax owed on vehicles held for their personal or business use.

Art. 6.01 imposes a tax on every retail sale of a motor vehicle. The term "retail sale" is defined in Art. 6.03 (B), Taxation-General, so as to include all sales of motor vehicles except those in which the vehicle is acquired for the exclusive purpose of resale or rental and not for use. A vehicle which was initially purchased to be held for rental but is subsequently converted to the personal use of the owner has not been acquired exclusively for the purpose of resale or rental.  Therefore the original transaction in which it was acquired is a retail sale on which a motor vehicle sales tax must be paid.   See Attorney General Opinion M-913 (1971).

Our answer to your final question is in the affirmative; when a vehicle held for rent is converted to the personal or business use of its owner, the motor vehicle sales tax becomes due.

## SUMMARY

The federal government is constitutionally immune from the payment of state sales taxes.

When a motor vehicle held for rent is converted to the personal or business use of its owner, the motor vehicle sales tax becomes due. The term "owner's book value" refers to the cost of a motor vehicle less reasonable depreciation.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee

lg