**FEDERAL RESERVE BANK OF BOSTON, Plaintiff,**

v.

**COMMISSIONER OF CORPORATIONS AND TAXATION OF the COMMONWEALTH OF MASSACHUSETTS, Defendant.**

Civ. A. No. 73–882–G.

United States District Court,
D. Massachusetts.

Oct. 1, 1974.

Richard McCarthy, Daniel Bickford, Chester M. Howe, Ely, Bartlett, Brown & Proctor, Boston, Mass., for plaintiff.

Joseph Grasso, Asst. Atty. Gen., Boston, Mass., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

GARRITY, District Judge.

The Federal Reserve Bank of Boston in this case seeks a declaration concerning the legality of Massachusetts sales or use taxes on materials used to construct its new building. The court's dismissal of the petition declining to exercise jurisdiction under the doctrine of Great Lakes Co. v. Huffman, 319 U.S. 293 (1943) was reversed and remanded by the Court of Appeals, No. 74–1028, July 11, 1974, 499 F.2d 60. The Court of Appeals also concluded that abstention was inappropriate where interpretation of the language of the Commonwealth's statute is "almost inextricably interwoven with federal issues."

Plaintiff's motion for summary judgment is based on alternative theories of relief. It asserts first that it is entitled as a matter of state law to a certificate of exemption from sales taxes under Mass.G.L. c. 64H, § 6(d) or (f),[1] and second, that it is exempt from tax as a matter of federal law under 12 U.S.C. § 531.[2] Numerous briefs were filed and oral argument held. After oral argument, it is the court's judgment that no material issues of fact remain in dispute and that the case is ripe for summary judgment.

It is clear that the bank is an agency of the United States within the meaning of Mass.G.L. c. 64H, § 6(d). "The Federal reserve banks act as depositories for money held in the United States Treasury and as fiscal and monetary agents of the United States. 12 U.S.C. § 391." No. 74–1028, July 11, 1974, 499 F.2d 60. The Commissioner of Corporations and Taxation so ruled in his decision denying a certificate of exemption under Mass.G.L. c. 64H, § 6(f)(1).

The bank, in planning construction of the new building, is following guidelines issued by the Board of Governors of the Federal Reserve System, which recommends that more office space than presently needed be planned, and that the surplus space be leased until the bank's requirements increase in order to make the building of the excess space "economically defensible."[3] While first

---

1. "The following sales and the gross receipts therefrom shall be exempt from the tax imposed by this chapter:

   (d) Sales to the United States, the Commonwealth or any political subdivision thereof, or their respective agencies.

   . . . . . .

   (f) Sales of building materials and supplies to be used in the construction . . . of (1) any building structure . . . owned by or held in trust for the benefit of any governmental body or agency mentioned in paragraph (d) and used exclusively for public purposes . . . provided, however, that such govern-

mental body or agency . . . shall have first obtained a certificate from the commissioner. . . ."

2. 12 U.S.C. § 531 provides in pertinent part, "Federal Reserve banks, including the capital stock and surplus therein and the income derived therefrom, shall be exempt from Federal, State and local taxation, except taxes upon real estate."

3. "When, for various reasons, relocation of the Bank to a new site is deemed advisable, the building program should be developed to meet predictable needs for a minimum of thirty years. . . . It is recommended that a new building provide twenty percent

preference in leasing excess space will go to government agencies, the bank concedes and the Commissioner assumed that private tenants are possible lessees of bank space. For this reason the Commissioner held that the building would not be "used exclusively for public purposes" within Mass.G.L. c. 64H, § 6(f)(1).

In building excess space under the guidelines, the bank is working for public purposes, that is, to assure sufficient space for the bank's future operations. A structure requiring the security features and permanence of this bank must allow for future expansion without further construction. The entire building is being planned and built for the public purpose of carrying on the important functions of the bank. Eventually the bank's activities will in all likelihood utilize all of the space. The leasing by the bank of excess space, even to private tenants, also has a public purpose—to justify the cost of this excess space. All monies derived from the leasing of the space, after payment of expenses and a six percent dividend (12 U.S.C. § 289) are paid into the bank's surplus fund, which may be used to supplement the United States gold reserve or to reduce the outstanding bonded indebtedness of the United States (12 U. S.C. § 290).

■ We conclude that the bank building is to be used by its owner, the bank, exclusively for public purposes. We cannot read the state statute so narrowly as to disqualify the bank construction materials from exemption because of the possibility that some space will be used by private tenants. Were the bank to hold the space vacant, foregoing the income which economically justifies the construction of the excess space, there would be no question as to the applicability of the exemption. Un-

der the circumstances the possible leasing of space to private tenants is as much if not more a use for public purposes than holding space vacant. We therefore hold that the bank is entitled to a certificate of exemption under Mass.G.L. c. 64H, § 6(f) and that the Commissioner erred in denying the request for such an exemption.

After the denial of a certificate of exemption by the Commissioner, plaintiffs made changes in the conditions of its contract, which expressly refer to the denial of exemption and designate the contractor and subcontractors as agents and subagents for the bank in purchasing arrangements. The changes provide that a bank officer will execute all contracts for purchase, that all invoices and bills of sale will run to the bank, and that title passes to the bank on delivery to the site and payment by the bank. Plaintiff's contention is that these changes make the bank the purchaser of the materials and that it is therefore exempt from tax under either Mass.G. L. c. 64H, § 6(d), which exempts all sales to agencies of the United States, or under 12 U.S.C. § 531, which by federal law exempts all federal reserve banks from tax. The case of Kern-Limerick, Inc. v. Scurlock, 1954, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546, supports plaintiff's argument. There, the court stated that even if the contract was drafted by the Navy Department to conserve funds,

"since purchases by independent contractors of supplies for Government construction or other activities do not have federal immunity from taxation, the form of contracts when governmental immunity is not waived by Congress, may determine the effect of state taxation of federal agencies." 347 U.S. at 122–123, 74 S.Ct. at 411.

---

more gross office space than the peak area estimated to be required during the thirty years after the completion of construction . . . . The provision of this amount of extra space for future expansion will have a profound effect upon the design of new

Bank buildings, for it will be economically defensible only if this excess office space is leased until needed." Guidelines for Design and Construction of Federal Reserve Bank Buildings 15, 21 (1970).

The Court in Kern-Limerick held that the purchaser was the United States and was therefore exempt from state tax. Alabama v. King & Boozer, 1941, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, which upheld a similar state tax, was distinguished because there the legal incidence of the tax was held to fall on the independent contractor even though the economic burden on the United States was the same in both cases. See also United States v. Nevada State Tax Comm'n, D. Nev.1968, 291 F.Supp. 530, aff'd, 9 Cir. 1971, 439 F.2d 435.

Defendant suggests that the Supreme Court decisions in the "Michigan" cases, United States v. City of Detroit, 1957, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424; United States v. Township of Muskegon, 1958, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436; and City of Detroit v. Murray Corp., 1958, 355 U.S. 489, 78 S. Ct. 458, 2 L.Ed.2d 441, imply that designation of the bank as the purchaser in the contract terms is not determinative and that inquiry should be made as to the actual role of the contractor, whether he is in fact acting as a purchasing agent or actually operating independently with merely rubber stamping provisions by the bank. The tax in United States v. City of Detroit and in United States v. Township of Muskegon was a state tax on the use of land owned by the United States by private parties for commercial activities. The taxes were upheld because their legal incidence fell on the user of the property, not upon the owner. Analysis beyond the contract terms was required in those cases not to determine who the user was, but whether the use was for private commercial activities. And in City of Detroit v. Murray Corp. a tax was upheld on the possessor of materials used in a government contract, title to which had passed to the government, because the Court analyzed the statute as a tax on the privilege of possession, not on the government's ownership interest.

■ These cases do not disturb *Kern-Limerick*'s holding that where, as here, the terms of the contract make the United States the purchaser of materials, even where the terms are deliberately written so as to avoid sales taxes, the purchaser is exempt from tax. The court therefore also finds that the bank is here the purchaser of the materials and would be exempt as a matter of state law under Mass.G.L. c 64H, § 6(d).

Because we read the state statute to exempt the bank, there is no conflict between state and federal law and it is not necessary to decide whether 12 U.S.C. § 531 would control. Mass.G.L. c. 64I, § 7(b), exempts from use taxes any sales that are exempt from sales tax under c. 64H, as are these sales of construction materials and supplies. Accordingly the court orders that the judgment be entered for the plaintiff declaring that the ruling of the Massachusetts Commissioner of Corporations and Taxation is erroneous under Mass.G.L. c. 64H, § 6(f) and that a certificate of exemption under Mass.G.L. c. 64H, § 6(d) and (f) should issue.