635 F.Supp. 944 (1985)
UNITED STATES of America, Plaintiff,
v.
STATE OF MICHIGAN, Defendant.
No. G82-342 CA5.
United States District Court, W.D. Michigan, S.D.
October 11, 1985.
*945 John A. Smietanka, U.S. Atty. by Brenda A. Braceful, Asst. U.S. Atty., Grand Rapids, Mich., U.S. Dept. of Justice by Glenn L. Archer, Jr., Edward J. Snyder, Charles E. Stratton, Richard A. Correa, Attys., Tax Div., Washington, D.C., for plaintiff.
Frank J. Kelley, Atty. Gen. Richard R. Roesch, Asst. Atty. Gen. by Robert C. Ward, Jr., Lansing, Mich., for defendant.

OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
MILES, District Judge.
Jurisdiction of this action is conferred by 28 U.S.C. §§ 1345 and 2201, granting original jurisdiction in the district courts over any civil action commenced by the United States as plaintiff.
Plaintiff United States of America brought this action seeking a declaratory judgment that federal credit unions within the State of Michigan are "federal instrumentalities" and are thus constitutionally immune from state sales taxes. However, the parties have raised several subsidiary issues which must be addressed:
1. Does the Tax Injunction Act, 28 U.S.C. § 1341 bar this Court from asserting jurisdiction over the case?
2. Are federal credit unions "federal instrumentalities?"
3. Does the legal incidence of the Michigan sales tax fall on the retailer or on the seller?
4. What is the appropriate statute of limitations in this case?
Resolution of these issues does not dispose of the case, as the parties will be required, assuming the Court does find the federal credit unions to be constitutionally immune from state sales tax, to ascertain the exact amount of money to be restored to the United States.
The first federal credit union statute was enacted in 1934. The Federal Credit Union Act, 12 U.S.C. § 1751, et seq. was enacted to charter federal credit unions, defined as
... a cooperative association organized in accordance with the provisions of this chapter for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes.
12 U.S.C. § 1752(1).
Federal credit unions are exempt from state taxation as provided in 12 U.S.C. § 1768:
The Federal credit unions organized hereunder, their property, their franchises, capital, reserves, surpluses, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property of such Federal credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed.
The Michigan General Sales Tax Act, Mich. Comp.Laws Ann. § 205.51, et seq. provides for the imposition of a 4% sales tax on all retail sales, to be collected and remitted by the retailer. Mich.Comp.Laws Ann. § 205.54(5) provides an exemption from sales tax for all federal instrumentalities:
A person subject to a tax under this act shall not include in the amount of his or her gross proceeds used for the computation of the tax any proceeds of his or her business derived from sales to the United States, its unincorporated agencies and instrumentalities, any incorporated agency or instrumentality of the United States wholly owned by the United States or by a corporation wholly owned by the United States, the American Red Cross and its chapters and branches, and this state or its departments and institutions or any of its political subdivisions.
Thus, the crucial question, to be determined later in this opinion, is "Are federal credit unions federal `instrumentalities?'" *946 Does this Court lack subject matter jurisdiction because of the prohibition contained in 28 U.S.C. § 1341?
The Tax Injunction Act, 28 U.S.C. § 1341 provides:
The district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.
Defendant contends that this provision prohibits the Court from assuming jurisdiction over the case.
This argument is unmeritorious and must be rejected. It is uniformly held that 28 U.S.C. § 1341 has no application to suits by the United States challenging the constitutionality of a state tax as applied to it. As the United States Supreme Court held in Department of Employment et al. v. United States et al., 385 U.S. 355, 357-58, 87 S.Ct. 464, 466-67, 17 L.Ed.2d 414 (1966)
... we conclude, in accord with an unbroken line of authority and convincing evidence of legislative purpose, that § 1341 does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exaction.
Also see United States v. Anderson County, Tennessee, 705 F.2d 184 (6th Cir.1983); United States v. Arlington County, Virginia, 326 F.2d 929 (4th Cir.1964).
Defendant claims that the threshold question is whether the credit unions are "federal instrumentalities;" only after this question is determined can it be ascertained whether this Court has jurisdiction or is prohibited by 28 U.S.C. § 1341. This contention, too, is unmeritorious. It cannot be argued that this Court lacks jurisdiction to determine whether credit unions are or are not in fact federal instrumentalities; that is a legal determination independent of and subsequent to determination of the propriety of jurisdiction. 28 U.S.C. § 1345 clearly gives this Court original jurisdiction over civil actions brought by the United States as plaintiff. The United States' right to bring such actions in the district courts as sovereign to protect its interests and policies is well established. United States v. Arlington County, Virginia, supra.
Defendant next cites two Supreme Court cases for the proposition that section 1341 enacts an unequivocal barrier to suits in the federal court to enjoin the assessment or collection of any state tax. See, e.g., Moe v. The Confederated Salish and Kootenai Tribes of the Flathead Reservation, et al., 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); California v. Grace Brethren Church, 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). However, none of the cases cited by defendant concern the right of the United States as plaintiff to challenge the constitutionality of any state tax as applied to it. Both of the cases cited above arose as a result of suits by private plaintiffs claiming exemption from state taxes, not the right of the Sovereign to petition in its own courts.
There is no reason to believe that the holding of Department of Employment v. United States, supra, that section 1341 is inapplicable to suits by the United States, is not valid today.

Are Federal Credit Unions Federal "Instrumentalities?"
A state may not, consistent with the Supremacy Clause of the Constitution, impose a tax directly upon the United States. United States v. New Mexico, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580; M'Culloch v. Maryland, 4 Wheat 316, 4 L.Ed. 579 (1819). This immunity extends to private entities which "stand in the Government's shoes." United States v. New Mexico, supra. For an entity to qualify for state tax immunity as a federal "instrumentality" it must so intimately be connected with the exercise of power by the federal government that taxation of it would be a direct interference with the function of government itself. Id.
Plaintiff correctly notes that every court which has considered the question of the instrumentality status of federal credit unions has found that they are federal instrumentalities. Particularly, the cases of *947 United States of America v. California State Board of Equalization, 2 Ca.State Tax Rep. (CCH), ¶ 400-071, aff'd, 709 F.2d 1518 (9th Cir. May 13, 1983) and United States v. State of Maine, 524 F.Supp. 1056 (D.Me.1981) have specifically held that federal instrumentality status attaches to federally chartered credit unions.
As the Court stated in United States v. State of Maine, supra at 1058-59,
(1) Federal Instrumentalities? The State's first contention, that federal credit unions are not federal instrumentalities, need not long detain the Court. Federal credit unions are nonprofit cooperative associations of individuals organized under the FCUA `for the purpose of promoting thrift among [their] members and creating a source of credit for provident or productive purposes.' 12 U.S.C. § 1752(1). They are authorized to make loans to their members and to invest in securities of the United States and in specified other securities. 12 U.S.C. § 1757. They are chartered and extensively regulated by the National Credit Union Administration. 12 U.S.C. § 1754 (chartering); id §§ 1751-90 and 12 C.F.R. §§ 700.1-761-2 (regulation).
Congress originally authorized the establishment of federal credit unions in 1934, primarily to deal with the problems of scarce credit and high interests rates. S.Rep.No. 555, 73d Cong., 2d Sess. (1934). Through the federal credit unions the federal government makes possible low cost loans to members of those credit unions. Without question, they thus perform an important governmental function. See Federal Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 102, 62 S.Ct. 1, 5, 86 L.Ed. 65 (1941). Federal credit unions are also authorized to act as fiscal agents of the United States and as depositories of public money, 12 U.S.C. § 1767, functions which have been recognized as important purposes of the federal government. See Smith v. Kansas City Title & Trust Co., supra, 255 U.S. [180] at 209-10, 41 S.Ct. [243] at 248 [65 L.Ed. 577].
[2] This Court holds, as have other courts addressing this issue, that federal credit unions are instrumentalities of the federal government engaged in the performance of important government functions. See United States v. California State Board of Equalization, No. CV 81-1588-R (C.D.Cal. Aug. 26, 1981); Electrical Federal Credit Union v. Heckers, No. C-13176 (Denver Cty.Dist. Ct., Colo. Dec. 7, 1970); Tabco Federal Credit Union v. Goldstein, No. 2836 (Baltimore Cty.Cir.Ct., Md. June 22, 1964), 1 Md. Tax Cases (CCH) ¶ 200-411.
(footnotes omitted.)
The cases cited by defendant are not persuasive. Defendant cites Gibson v. First Federal Savings & Loan Ass'n., 347 F.Supp. 560 (E.D.Mich.1972) to support its contention that the "instrumentality status" must be examined by reference to the purpose of the entity seeking tax-exempt status, its necessity to governmental functions, and the purpose of the tax imposed. In that case the court found that federal savings and loan associations were not federal instrumentalities. That holding is somewhat doubtful in light of United States v. State Tax Commission, 481 F.2d 963 (1st Cir.1973), holding federal savings and loan associations to be federal instrumentalities.
Defendant next cites Justice Marshall's dissent in the case of First Agricultural National Bank of Berkshire County v. State Tax Commission, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968). Interestingly enough, the majority holding of that case is that national banks were immune as federal instrumentalities from Massachusetts sales and use taxes. The dissent is of little use to this case.

Is the Legal Incidence of the Michigan Sales Tax on the Retailer or on the Consumer?
In United States v. New Mexico, supra the Supreme Court reaffirmed the principle that a state may not impose a tax the legal incidence of which falls on the United States. Kern-Limerick Inc. v. Scurlock, 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 *948 (1954). This is to be contrasted with those cases in which the economic burden of a state tax is passed along to the United States, but the legal incidence of the tax rests on a third party. For instance, it is legal for a state to impose a tax on a federal contractor, who then passes the tax along to the United States in the form of increased costs. James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937).
Thus, the next question is, upon which party does the legal incidence of the Michigan sales tax fall, upon the retailer selling goods and services to the federal credit unions, or upon the federal credit unions themselves?
As noted above, Mich.Comp.Laws Ann. § 205.54 provides for the retail sales tax to be collected and remitted to the state by the retailer. Additionally, Mich.Comp. Laws Ann. § 205.73 allows the retailer to pass on the sales tax to the ultimate consumer:
No person engaged in the business of selling tangible personal property at retail shall advertise or hold out to the public in any manner, directly or indirectly, that the tax herein imposed is not considered as an element in the price to the consumer. Nothing contained in this Act shall be deemed to prohibit any taxpayer from reimbursing himself by adding to his sale price any tax levied hereunder ...
(Emphasis added).
Defendant cites the Michigan Constitution, Art. 9, § 8, and various Michigan cases to support its contention that the legal incidence of the Michigan sales tax is upon the retailer. In fact, several Michigan cases have so held. Federal Reserve Bank v. Department of Revenue, 339 Mich. 587, 64 N.W.2d 639 (1954); Sims v. Firestone Tire & Rubber Co., 397 Mich. 469, 245 N.W.2d 13 (1976). Defendant also cites a United States Supreme Court case for the proposition that determinations by state courts as to the legal incidence of a state tax are controlling upon the federal courts. Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941).
However, recent pronouncements by the Supreme Court clearly show that determination of the legal incidence of a state tax, when the tax immunity of a federal instrumentality is at issue, is a question of federal, not state, law and determinations by state courts are not controlling. In Diamond National Corp. v. State Board of Equalization, 425 U.S. 268, 96 S.Ct. 1530, 47 L.Ed.2d 780 (1976), a national bank appealed from a decision of a state court holding that the legal incidence of a sales tax fell upon the retailer; thus, federal tax immunity was inapplicable. The United States Supreme Court reversed, holding that it was not bound by the California court's contrary conclusion:
The judgment is reversed. We are not bound by the California court's contrary conclusion and hold that the incidence of the state and local sales taxes falls upon the national bank as purchaser and not upon the vendors. The national bank is therefore exempt from the taxes under former 12 U.S.C. § 548 (1964 ed.), which was in effect at the time here pertinent. First Agricultural Nat. Bank v. Tax Comm'n., 392 U.S. 339, 346-348, 88 S.Ct. 2173, 2177-2178, 20 L.Ed.2d 1138, 1143-1144 (1968).
Reversed.
Also in United States v. Tax Commission, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975), the Court affirmed the principle that the legal incidence of a state tax does not always fall on the person responsible for its payment:
In First Agricultural Nat. Bank v. Tax Comm'n., 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), we squarely rejected the proposition that the legal incidence of a tax falls always upon the person legally liable for its payment. Massachusetts imposed a sales and use tax on purchases of tangible personal property, including purchases by national banks for their own use. The statute directed that `each vendor in this commonwealth shall add to the sale price and shall collect from *949 the purchaser the full amount of the tax imposed ...' Id., at 347, 88 S.Ct., at 2178. Like the District Court here, the supreme Judicial Court of Massachusetts stated: `The legal incidence of a tax [is] ... determined by who is responsible ... for payment to the state of the exaction.' 353 Mass. 172, 177, 229 N.E.2d 245, 259 (1967). Accordingly, the state court held that the legal incidence of the tax was on the vendor. We reversed, stating: `It would appear to be indisputable that a sales tax which by its terms must be passed on to the purchaser imposes the legal incidence of the tax upon the purchaser ... There can be no doubt from the clear wording of the statute that the Massachusetts Legislature intended that this sales tax be passed on to the purchaser. For our purposes, at least, that intent is controlling.' 392 U.S., at 347-348, 88 S.Ct., at 2178. See also Gurley v. Rhoden, 421 U.S. 200, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975).
We see no difference between this markup and a sales tax which must be collected by the seller and remitted to the State. The Tax Commission would distinguish First Agricultural Nat. Bank on the ground that because the immunity of the national bank from state taxation in all but a few closely defined areas was conferred by statute, c. 267, 42 Stat. 1499, as amended, 12 U.S.C. § 548, the Court did not decide `the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities.' 392 U.S., at 341, 88 S.Ct., at 2175. But the controlling significance of First Agricultural Nat. Bank for our purposes is the test formulated by that decision for the determination where the legal incidence of the tax falls, namely, that where a State requires that its sales tax be passed on to the purchaser and be collected by the vendor from him, this establishes as a matter of law that the legal incidence of the tax falls upon the purchaser.
Thus, it is clear that the question of whether the legal incidence of the Michigan sales tax falls upon the retailer or upon the federal credit unions is a federal question; this Court need not defer to the state courts' determinations.
Defendant claims (defendant's brief, p. 30) that
There is little doubt that the economic impact or burden of the Michigan sales tax ultimately rests ... upon purchasers of tangible personal property including state and federal credit unions operating in ... Michigan. However, there has never been any legal or administrative finding or order to indicate that the legal incidence of the Michigan sales tax is upon any person other than a retailer selling tangible personal property in ... Michigan.

Plaintiff disputes this contention, and points to Michigan Department of Revenue, Regulation 21, 1 Mich.Tax Rep. (CCH), ¶ 60-305 (Regulation 21) which provides:
[¶ 60-305] [T 205.21] Reg.21. Sales Tax Included in Gross Sales and Collection Bracket.  (1) A taxpayer shall include the sales tax as part of the selling price of tangible personal property sold by the taxpayer. The taxpayer is not required to state the tax as a separate item to the consumer, but may not advertise or hold out to the public in any manner, directly or indirectly, that the tax is not considered as an element in the price of the consumer.
* * * * * *
(3) When the taxpayer's gross proceeds from sales include sales tax collected and when the gross proceeds, including the tax, are entered as gross sales on the tax return, then the taxpayer may deduct from the gross sales the amount of tax included there, if it is shown as a separate deduction on the taxpayer's return. Only under these conditions, however, may the taxpayer take such a deduction and then only in the following manner:
(A) Show the total gross sales, including sales tax, opposite item no. 1 on the return.
(B) Subtract from item no. 1 the amount of the nontaxable deductions, excluding *950 the $50.00 statutory exemption, to arrive at the net sales.
(C) Divide the net sales as obtained above by 104 to arrive at 1%, then multiply by 4 to obtain the amount of the tax included in the gross sales, which amount shall be shown as a separate deduction on the return and described as `sales tax included in gross sales.'
Plaintiff points to the use of the mandatory "shall include" in the first sentence of the regulation as an indication of intent that the tax must be passed on to the consumer. Defendant counters that plaintiff has "misconstrued" this regulation, but does not specify just how the regulation should be interpreted.
In the quoted excerpt from United States v. Tax Commission, supra, the Supreme Court noted that the Massachusetts statute mandated that the sales tax be collected by the vendor from the purchaser. Other cases have noted similar statutory language requiring the purchaser to assume the tax debt as an indication that the legal incidence of the sales tax falls on the purchaser of property. First Agricultural National Bank, supra.
That is not true of the Michigan statute, however. Mich.Comp.Laws Ann. § 205.52 specifically provides that the taxes levied are a personal obligation of the taxpayer, i.e., the vendor:
205.52 Sales tax; rate
Sec. 2. Levy, rate. There is hereby levied upon and there shall be collected from all persons engaged in the business of making sales at retail, as hereinbefore defined, an annual tax for the privilege of engaging in such business equal to 4% of the gross proceeds thereof, plus the penalty and interest when applicable as hereinafter provided, less deductions allowed in sections 4 and 4a.
Separate accounting practices, penalty. ... The taxes levied hereunder shall be a personal obligation of the taxpayer.
The statutory language does not conclude the issue however. Regulation 21(3) provides that the taxpayer (the retailer) may deduct the sales taxes collected from his gross proceeds under certain conditions. The regulation provides that this deduction may be taken "when the taxpayer's gross proceeds from sales include sales tax collected ..." and further provides that the deduction may be taken "[o]nly under these conditions ..." The United States points out that the deduction may thus be taken only if the tax is collected from the purchaser, creating an economic incentive for the retailer to "pass on" the tax. A similar situation was considered conclusive in United States v. California State Board of Equalization, 650 F.2d 1127 (9th Cir. 1981), aff'd, 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 157. The Court discussed the economic ramifications of a taxing scheme which did not explicitly place the tax incidence on the purchaser as follows:
LEGAL INCIDENCE OF CALIFORNIA SALES TAX SCHEME [1, 2] The legal incidence of a tax falls on the party who the legislature intends will pay the tax. See United States v. Tax Commission, 421 U.S. 599, 609, 95 S.Ct. 1872, 1878, 44 L.Ed.2d 404 (1975); First Agricultural National Bank v. State Tax Commission, 392 U.S. 339, 348, 88 S.Ct. 2173, 2178, 20 L.Ed.2d 1138 (1968). A determination of legal incidence is not, however, an inquiry into who is legally obligated to remit the collected tax to the state. That is, the legal incidence of a tax does not necessarily fall on the party who acts as conduit by forwarding collected taxes to the state. See United States v. Tax Commission, 421 U.S. at 607, 95 S.Ct. at 1877.
The concept of legal incidence must also be distinguished from the notion of economic burden. The constitution only prohibits the state from levying a tax on the United States; it does not prohibit the state from enacting a taxing scheme whose effect is to increase prices paid by the United States. Therefore, there is no constitutional violation if the state levies a tax on a lessor to the United States and the lessor recoups this tax payment by raising the lease price  increasing the economic burden  to the United States. *951 See Gurley v. Rhoden, 421 U.S. 200, 204, 95 S.Ct. 1605, 1608, 44 L.Ed.2d 110 (1975); United States v. City of Detroit, 355 U.S. 466, 469, 78 S.Ct. 474, 476, 2 L.Ed.2d 424 (1958); Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 118, 74 S.Ct. 403, 408, 98 L.Ed. 546 (1954).
In determining who the legislature intends will pay the tax, the entire state taxation scheme and the context in which it operates as well as the express words of the taxing statute must be considered. See United States v. Tax Commission, 421 U.S. at 609  10 & n. 8, 95 S.Ct. at 1878-79 and n. 8 (finding that the tax scheme unavoidably required the suppliers to pass the tax on to the purchasers); United States v. City of Detroit, 355 U.S. at 469, 78 S.Ct. at 476 (`[I]n determining whether a tax is actually laid on the United States or its property the Court goes beyond the bare face of the taxing statute to consider all relevant circumstances.').
The California sales tax scheme in this case is unlike statutes struck down in previous cases because it is facially neutral as to who is to pay the sales tax. Compare Cal.Civil Code § 1656.1(a) (West Supp.1980) (`Whether a retailer may add sales tax reimbursement to the sales price of the tangible personal property sold at retail to a purchaser depends solely upon the terms of the agreement of sale.') with United States v. Tax Commission, 421 U.S. at 608-09, 95 S.Ct. a 1878 (Mississippi statute requiring the buyer to pay tax to seller who would remit tax to the state); First Agricultural Natural [sic] Bank, 392 U.S. at 347, 88 S.Ct. at 2177 (Massachusetts statute requiring seller to collect tax from buyer). Despite the government's arguments to the contrary, the presumptions set forth in subsections (a) and (b) do not appear to be a subtle legislative attempt to require the seller to pass the tax on to the buyer. Rather, these presumptions arise only after the parties have independently manifested their intentions as to who will pay the tax. Finally, the tables set out in subsection (c) appear only to be intended to assist retailers and consumers in calculating the tax on small, day-to-day purchases.
The seeming neutrality of section 1656.1 is rendered illusory, however, by the interaction of California Revenue and Taxation Code sections 6012 and 6051. As noted above, the sales tax is levied on the seller's gross receipts, Cal.Rev. and Tax. Code § 6051 (West Supp.1980), which are measured by the total lease price. See id.; Regulation 1660. If the lessor requires the lessee to pay the tax, the amount of the tax is deducted from the lessor's gross receipts. If the lessor pays the tax himself  absorbs the tax  and passes the economic burden of the tax on to the lessee as an increase in the lease price, the amount of the tax paid by the lessor is not deducted from his gross receipts. Since the sales tax is levied on the basis of the lessor's gross receipts, the lessor must remit a larger sum of money to the state as taxes if he absorbs the tax himself than if he collects the tax from the lessee. Therefore, the lessor maximizes his profit only if he separately states and collects the tax from the lessee. This point is clearly illustrated by the example in footnote 6.
[3] Despite the facial neutrality of Section 1656.1, the strong economic incentive created by Section 6012 all but compels the lessor to collect the tax from the lessee. In sum, the California sales tax scheme manifests a legislative intent that the lessee pay the sales tax. It places the legal incidence of the tax on the United States and, therefore, violates the United States' constitutional immunity from state taxation.
6. Assuming a $1,000 lease to the United States and a tax rate of 5 percent:
(1) The lessor separately states the sales tax and collects it from the lessee. He collects a total of $1,050  1,000 lease price and 50 tax  from the lessee. Because he separately stated the tax and collected it from the lessee, the $50 he collected in tax is excluded from his gross receipts under § 6012. The lessor *952 is, therefore, taxed on gross receipts of $1,000 and must remit $50 to the state. The lessor nets $1,000 on the lease.
(2) The lessor does not separately state the sales tax but instead passes it on to the lessee as an increase in price. He collects a total of $1,050 from the lessee. Because he has absorbed the tax under Cal.Civil Code § 1656.1(b) rather than added the tax to the total sales price under § 1656(a) he gets no exclusion from his gross receipts under § 6012. The lessor, therefore, pays a tax on gross receipts of $1,050 and must remit $52.50 to the state. The lessor nets $997.50 on the lease.
(3) The lessor does not separately state the sales tax and does not collect the tax from the lessee  his gross proceeds of the sale are considered to be $1,000. He receives $1,000 from the lessee. He pays a tax out of his pocket of $50  he nets $950 on the lease.
(4) The lessor separately states the sales tax, but does not collect the tax from the lessee  the statute presumes his gross proceeds of the sale to be $1,050. He receives $1,000 from the lessee. He pays a tax of $52.50 out of his own pocket  he nets $997.50 on the lease.
Plaintiff also points out that Mich.Comp. Laws Ann. § 205.73, excerpted supra, contains a prohibition against the seller from representing to the public that the sales tax is not considered an element of the price of the goods. This factor was relied on by the Supreme Court in First Agricultural National Bank v. Tax Commission, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968) as an indication that the legal incidence of the tax is upon the purchaser.
[6, 7] It would appear to be indisputable that a sales tax which by its terms must be passed on to the purchaser imposes the legal incidence of the tax upon the purchaser. See Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 99, 62 S.Ct. 1, 3, 86 L.Ed. 65 [(1941)]. Subsection 3 of the Massachusetts sales tax provides: `Reimbursement for the tax hereby imposed shall be paid by the purchaser to the vendor and each vendor in this commonwealth shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed by this section, or an amount equal as nearly as possible or practicable to the average equivalent thereof; and such tax shall be a debt from the purchaser to the vendor, when so added to the sales price, and shall be recoverable at law in the same manner as other debts.' Acts and Resolves, 1966, c. 14, § 1, subsec. 3. (Emphasis added.) This subsection reads to us as a clear requirement that the sales tax be passed on to the purchaser. And this interpretation is reinforced by subsection 23 which prohibits as unlawful advertising the holding out by any vendor that he will assume or absorb the tax on any sale that he may make. We cannot accept the reasoning of the court below that simply because there is no sanction against a vendor who refuses to pass on the tax (assuming this is true), this means the tax is on the vendor. There can be no doubt from the clear wording of the statute that the Massachusetts Legislature intended that this sales tax be passed on to the purchaser. For our purposes, at least, that intent is controlling. And it seems clear to us that the force of the law, especially the language in subsection 3, is such that, regardless of sanctions, businessmen will attempt, in their everyday commercial affairs, to conform to its provisions as written.
[8] For these reasons we reverse and hold that appellant is immune from both the Massachusetts use and sales taxes.
In the absence of any authority to the contrary, the Court finds that United States v. California State Board of Equalization, supra, must control the outcome here. Defendant has not distinguished the case in its brief. The "economic realities" test employed by the Ninth Circuit is apt here. Retailers in Michigan are similarly "compelled" by economic realities *953  i.e. the maximization of profits  to pass along the sales tax. The legal incidence of the tax is thus on the United States through its federal credit unions. The tax must thus be held unconstitutional as applied to the federal credit unions.

What is the Appropriate Statute of Limitations?
Defendant claims that plaintiff is limited to the four year statute of limitations enacted at Mich.Comp.Laws Ann § 205.59. Defendant relies on the general principle in civil rights actions that, in a federal court action to enforce a federally created right, the time limitation prescribed by the statute of limitation of the state is applicable unless a different limitation period is prescribed by federal law. To support its contention, defendant cites Johnson v. Railway Express Agency, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) and Board of Regents v. Tomanio, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).
Plaintiff correctly points to the statute of limitations enacted at 28 U.S.C. § 2415, which provides for a six year period of limitation to recover on any contract express or implied in law. In United States v. DeKalb County, C79-1683A (U.S. District Court-Northern District of Georgia, July 6, 1982) the Court held that an action to recover overpaid taxes is one in "quasi-contract," thus is one to recover on an "implied contract." The case thus falls within the six year limitation established in 28 U.S.C. § 2415. Also see United States v. Neidorf, 522 F.2d 916 (9th Cir.1975) (holding six year period applicable where U.S. sues in quasi contract).
The cases cited by defendant are inapplicable for another, more fundamental reason. The United States is not subject to local statutes of limitations unless it has consented to the application of those statutes. United States v. Kellum, 523 F.2d 1284 (5th Cir.1975). There is no indication here  and defendant does not claim  that the United States has somehow consented to the application of the limitation period contained in the general Michigan Sales Tax Act.

Conclusion
The declaratory judgment requested by plaintiff is granted. The sales tax imposed upon federal credit unions is unconstitutional as imposed upon a federal instrumentality. Further, the legal incidence of the sales tax is upon the credit union as purchaser and not upon the retailer. It is not necessary to address plaintiff's contention that the sales tax invidiously discriminates against federal credit unions as opposed to similarly situated state institutions. Plaintiff is entitled to recover all sales taxes paid by federal credit unions during the six years prior to the filing of the complaint.
IT IS SO ORDERED.